## 23-4485

# United States Court of Appeals
### *for the*
# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

HERBERT EUGENE BRANDON, a/k/a Smiley,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

# BRIEF OF APPELLANT

Eric J. Foster
ATTORNEY AT LAW
22 South Pack Square, Suite 300
Asheville, North Carolina 28801
(828) 771-4787

*Counsel for Appellant*



COUNSEL PRESS      (800) 4-APPEAL • (JOB 809845)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................... ii

JURISDICTIONAL STATEMENT ......................................................... 1

ISSUES PRESENTED FOR REVIEW .................................................... 2

STATEMENT OF THE CASE ............................................................... 3

STATEMENT OF THE FACTS .............................................................. 4

SUMMARY OF ARGUMENT ............................................................. 11

ARGUMENT ....................................................................................... 12

I.   The District Court erred by finding that Mr. Brandon
     maintained a hotel room for the purpose of manufacturing or
     distributing a controlled substance ........................................... 12

     Standard of Review ................................................................... 12

     Discussion of the Issue ............................................................. 12

II.  The District Court erred by finding that the offense involved
     the importation of methamphetamine ....................................... 15

     Standard of Review ................................................................... 15

     Discussion of the Issue ............................................................. 15

CONCLUSION .................................................................................... 19

REQUEST FOR ORAL ARGUMENT .................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*United States v. Abu Ali,*
    528 F. 3d 210 (4th Cir. 2008)................................................................12, 15

*United States v. Allen,*
    446 F. 3d 522 (4th Cir. 2006)................................................................12, 15

*United States v. Job,*
    871 F. 3d 852 (9th Cir. 2017)........................................................................17

*United States v. Lord,*
    915 F. 3d 1009 (5th Cir. 2019)..............................................................13, 14

*United States v. Nance,*
    957 F. 3d 204 (4th Cir. 2020)................................................................12, 15

*United States v. Serfass,*
    684 F. 3d 548 (5th Cir. 2012)................................................................17, 18

**Statutes & Other Authorities:**

18 U.S.C. § 1956(h)...........................................................................................1

18 U.S.C. § 3742(a)............................................................................................1

21 U.S.C. § 841(a)(1).........................................................................................1

21 U.S.C. § 841(b)(1)(A)....................................................................................1

21 U.S.C. § 841(b)(1)(C)....................................................................................1

21 U.S.C. § 846...................................................................................................1

U.S.S.G. § 2D1.1(b)(5).....................................................................................15

U.S.S.G. § 2D1.1(b)(12)...................................................................................13

## JURISDICTIONAL STATEMENT

The District Court derived jurisdiction from 18 U.S.C. § 1956(h) and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841 (b)(1)(C), and 846.

This Court derives jurisdiction from Mr. Brandon's appeal pursuant to 18 U.S.C. § 3742(a).

The District Court sentenced Mr. Brandon on July 18, 2023, filing the judgment on July 25, 2023. Mr. Brandon appealed on July 25, 2023.

1

## ISSUES PRESENTED FOR REVIEW

I.     The District Court erred by finding that Mr. Brandon maintained a hotel room for the purpose of manufacturing or distributing a controlled substance.

II.    The District Court erred by finding that the offense involved the importation of methamphetamine.

## STATEMENT OF THE CASE

On June 19, 2020, a grand jury in the Western District of North Carolina charged Mr. Brandon in a bill of indictment with various offenses related to the distribution of drugs, possession of a firearm, and laundering the proceeds from the distribution of drugs.  On October 28, 2021, pursuant to a plea agreement with the government, Mr. Brandon pled guilty to two counts of drug distribution, one count of conspiracy to distribute drugs, and one count of money laundering.  The government, pursuant to the agreement, dismissed the remaining counts.  On July 18, 2023, the district court sentenced Mr. Brandon to 292 months imprisonment, filing the judgment on July 25, 2023.  Mr. Brandon appealed the judgment on July 25, 2023.

## STATEMENT OF THE FACTS

Mr. Brandon sold contraband to an informant working for the Department of Homeland Security on six occasions in the late summer and early fall of 2019.  [JA171-72].  As a result of those transactions, he pled guilty to distribution of heroin, distribution of methamphetamine, conspiracy to launder the proceeds of drug transactions, and a conspiracy to distribute controlled substances.  [JA164].  No other persons were charged with being members of either conspiracy.  As part of his agreement with the government, Mr. Brandon agreed to the amount of controlled substance which would be attributed to him pursuant to the sentencing guidelines.  [JA111].[1]

According to the informant, Mr. Brandon had been selling controlled substances to the informant before the informant began working for Homeland Security.  [JA169].  Mr. Brandon "sold these narcotics from his

---

[1] The presentence investigation report (hereinafter "PSI") would attribute additional controlled substances to which Mr. Brandon did not agree. Since it did not change the guideline calculation, it was not an issue at sentencing and Mr. Brandon does not contest it now.

4

residence" from February, 2019, through June, 2019.  [JA169].  When the

informant began to arrange transactions on behalf of the government[2],

however, the informant arranged for the transactions to take place in a

hotel room.  [JA170].  It is in this hotel room, from September through

November, 2019, in which all of the transactions which are the subject of

the indictment occurred.

Prior to sentencing, the United States probation office prepared the

PSI.  The PSI recommended increasing Mr. Brandon's Offense level by two

for each of: (1) possessing a firearm during the offense; (2) maintaining a

premises for the purpose of distributing the controlled substances; and (3)

engaging in the distribution of imported methamphetamine.  [JA175].  Mr.

Brandon objected to each proposed enhancement.  [JA161-163].

At the sentencing hearing, Mr. Brandon explained that he lived in a

home which he shared with his brother.  [JA61].  He further explained that

his girlfriend was the housekeeper at the hotel where the drug transactions

---

[2] According to the PSI, the informant "debriefed with law enforcement" on
June 28, 2019.  It is likely that the informant's conversion to law
enforcement is the result of his or her own arrest.

took place, and that she lived in the room at the hotel which Mr. Brandon used for the drug transactions. [JA62]. Mr. Brandon testified that his girlfriend rented the room and that she kept the key to the room. [JA65]. To gain entrance, he would "have to call her [to] see where she was at or just wait for her to get home or whatever." [JA65]. A Homeland Security agent who was not the informant testified that "the investigative team, I believe they went to the front desk, asked them who rented the room, and they had two IDs on file for the room. One of them was Mr. Brandon." [JA51-52]. The government produced neither an ID card nor the folio from the hotel room.

Evidence that the methamphetamine was imported was even thinner. Mr. Brandon explained that his source for the methamphetamine was "the Spanish guy that I got the drugs from." [JA63]. When asked by the prosecutor whether he called his supplier at a Mexican phone number, Mr. Brandon clarified that he meant "a Mexican guy's phone number."[3] [JA70].

---

[3] While the position of the Departments of Justice and Homeland Security regarding immigrants from Mexico and their presumed connection to the

Mr. Brandon testified that he would have drugs delivered to him "close by there, somewhere around the motel there." [JA64]. Mr. Brandon further specifically denied being "a member of any drug cartel." [JA72-73]. The government presented no evidence that the drugs which Mr. Brandon procured and resold came from Mexico. Indeed, the only evidence about Mexico at all was that Mr. Brandon attempted a single, failed transfer of money to an address in Nayarit, Mexico. [JA71].

Regarding Mr. Brandon's objection to the enhancement for maintaining a premises for the distribution of controlled substances, the court opined that "[i]t sounds like he and his girlfriend were the ones in control of the room." [JA74]. The court did not address Mr. Brandon's testimony that he did not have a key to the room and could only be let into

---

drug trade is well known, the pseudo-logical step from proof that a source is of Hispanic descent to proof that the methamphetamine was imported from Mexico is highly misleading if not outright offensive. It is unlikely Mr. Brandon knows whether his Hispanic source was from Mexico, the United States, or a different Central or South American country. Moreover, the assumption that any person of Hispanic descent who enters the drug trade is "importing" his product from Mexico is a creation of the Departments of Justice and Homeland Security with no basis in anything other than rank prejudice.

the room by his girlfriend.  After Mr. Brandon's counsel conceded that Mr.

Brandon used his girlfriend's hotel room to sell drugs on several occasions,

the court overruled the objection.  [JA75].  There was no specific discussion

of whether Mr. Brandon was a guest in premises controlled by his

girlfriend.

      Regarding the importation enhancement, the court reached it after

first opining that:

> There are people who can be helped.  There are also people
> who have to be warehoused.  When you get to Category 6,
> help's not going to help much.  And the bleeding hearts can
> keep bleeding.

[JA79].  Given that introduction to the legal issue, it is not surprising that

the court overruled the objection without accepting argument from Mr.

Brandon's counsel.  To the extent there is any explanation about why the

court imposed the enhancement, it is that the court believed "he [Mr.

Brandon] tried to send money to Mexico."  [JA79].  The court did not

address whether it was necessary to learn whether the contraband itself

was imported.

      The court sustained the firearm objection.  [JA81].

Mr. Brandon's counsel requested a sentence below the guidelines based on Mr. Brandon's difficult childhood and his severe addiction as an adult . [JA81-82]. After the court referred to "bad guys," Mr. Brandon's counsel responded that "I think Mr. Brandon is a good guy, a good guy that has severe addiction." [JA84]. The court was not pleased by that characterization. After describing Mr. Brandon's criminal history — a less than admirable history, though one less disqualifying of basic humanity than displayed by the court — the court opined:

> [M]y grandfather lived in a dirt floor and was farmed — on a farm that was pretty poor over in Haywood County. They didn't have public school then. There's some people today, rich people, that think we ought to do away with public schools. But there weren't any public schools over there.
>
> So my grandmother — my great-grandmother had to go to the Haywood Institute and had to — offered to work for a dollar — for free for his education. She made a deal to cook for him and do other things for him. He had to work for a dollar a day in a sawmill to make up for it while he went to school. Worked his way through there, worked as a news butch on a train, worked his way through law school, became a state senator, became a millionaire.
>
> He had zero privilege, but he didn't just lay there and die. He got off his — he got off his rear end and worked. And I have — I have grandfather privilege because he did something.

9

…

Somebody's got to do something.  So I get tired of all of this
stuff that nobody — you don't have to do any — oh, my gosh,
you had a tough upbringing.  There are a lot of people that had
it tough that made it and other people that had it tough and just
quit.

[JA87-88].  Needless to say, the court did not impose a sentence below the

guidelines.  The court sentenced Mr. Brandon to 292 months imprisonment.

[JA104].

Mr. Brandon appealed the judgment.  [JA101].

## SUMMARY OF ARGUMENT

The evidence was insufficient to show that Mr. Brandon "maintained" the premises where he sold drugs. To the contrary, the evidence showed that he was a guest in the hotel room "maintained" by someone else.

The evidence was insufficient to show that the methamphetamine Mr. Brandon sold was "imported." Reliance on a single undated and unsuccessful transfer of funds to Mexico is insufficient to show that Mexico is the country of origin of the methamphetamine Mr. Brandon received in North Carolina on a specific date.

## ARGUMENT

I.      The District Court erred by finding that Mr. Brandon maintained a hotel room for the purpose of manufacturing or distributing a controlled substance.

### Standard of Review

This court reviews a sentence for reasonableness, first "determining whether the district court committed any procedural error, such as improperly calculating the Guidelines range."  *United States v. Nance*, 957 F. 3d 204, 212 (4th Cir. 2020).  "A sentence based on an improperly calculated guidelines range will be found unreasonable and vacated."  *United States v. Abu Ali*, 528 F. 3d 210 (4th Cir. 2008).  In reviewing whether a sentencing court properly applied the guidelines, this Court "reviews the court's factual findings for clear error and its legal conclusions *de novo*.  *United States v. Allen*, 446 F. 3d 522, 527 (4th Cir. 2006).

### Discussion of the Issue

The guideline addressing the distribution of controlled substances recommends a two-level enhancement for a distributor who "maintained a premises for the purpose of manufacturing or delivering a controlled

12

substance."  U.S.S.G. § 2D1.1(b)(12).  In determining whether a person

"maintained" the premises, the court should consider "whether the

defendant held a possessory interest in (e.g., owned or rented) the premises

and the extent to which the defendant controlled access to, or activities at,

the premises."  Id., cmt. n. 17.

The Fifth Circuit reversed and remanded a sentence because the

sentencing court improperly applied this enhancement when, as the district

court did, in Mr. Brandon's case, the sentencing court found that the drug

distribution (in that case the manufacturing) itself supplied sufficient

reason to find maintenance of premises which were generally controlled by

someone else.  *United States v. Lord*, 915 F. 3d 1009 (5th Cir. 2019).  In that

case, Mr. Lord and a coconspirator "acquired a pill press and the raw

materials needed to manufacture Xanax pills … stored the pill press and

the materials in a locked storage room in [the coconpirator's] father's

business … and … met on one occasion in that room, spent ten to twelve

hours calibrating the pill press, and produced a batch of 'dummy' pills to

test the machine."  *Id.* at 1021.  Though the district court found that Mr.

13

Lord and his coconspirator exercised dominion and control over the premises — which they undoubtedly did while they used it for their unlawful activity — the court of appeals recognized that "we do not have any evidence that [Lord] could have gained or did gain 'unrestricted access to the premises' through [the coconspirator]." *Id.* at 1022. The Fifth Circuit explicitly noted that "[t]hough [the coconspirator] had his own key and could open and use the room without [the owner's] permission, [Lord] did not" and "[t]here is no indication that [Lord] was able to access the storage room without [the coconsipirator's] express permission and physical assistance unlocking the door." *Id.*

Mr. Brandon's case presents even less evidentiary support for the finding of "maintenance" since the person in whose room Mr. Brandon was a guest was not a coconspirator. There is no evidence that Mr. Brandon's girlfriend, who lived in the room, was aiding in Mr. Brandon's drug distribution activity; indeed, all evidence is that she simply let him use the room based on their personal relationship. As in *Lord*, Mr. Brandon did not have unrestricted access to the room, did not possess a key to the

14

room, and relied on his girlfriend's "express permission" to use the room

and her "physical assistance" in letting him in.

II.    The District Court erred by finding that the offense involved the
importation of methamphetamine.

## Standard of Review

This court reviews a sentence for reasonableness, first "determining

whether the district court committed any procedural error, such as

improperly calculating the Guidelines range." *United States v. Nance*, 957 F.

3d 204, 212 (4th Cir. 2020).  "A sentence based on an improperly calculated

guidelines range will be found unreasonable and vacated." *United States v.

Abu Ali*, 528 F. 3d 210 (4th Cir. 2008).  In reviewing whether a sentencing

court properly applied the guidelines, this Court "reviews the court's

factual findings for clear error and its legal conclusions *de novo*. *United

States v. Allen*, 446 F. 3d 522, 527 (4th Cir. 2006).

## Discussion of the Issue

The guideline addressing the distribution of controlled substances

recommends a two-level enhancement when "the offense involved the

importation of amphetamine or methamphetamine."  U.S.S.G. §

15

2D1.1(b)(5).  It is clear from the plain language of the guideline that the "importation" refers to the amphetamine or methamphetamine and not to unmentioned items peripheral to the drugs like money.  The only evidence as to the origin of the methamphetamine which Mr. Brandon sold to a government informant is that he received it from a Hispanic[4] man who delivered it to him near where Mr. Brandon resold it in the Charlotte area. A single payment which Mr. Brandon attempted to send to an address in Nayarit, Mexico — with no evidence that the attempt was near in time to any of the drug transactions — is insufficient to support the conclusion that the methamphetamine delivered to him near Charlotte was "imported."

The Ninth Circuit reversed and remanded a sentence because the sentencing court improperly applied this enhancement when, unlike in Mr. Brandon's case, *there was record evidence that the methamphetamine itself was*

---

[4] Mr. Brandon at times referred to his source as a "Mexican."  There is no objective evidence that Mr. Brandon had any reason to know his source's particular ethnic origin or where he lived.  To be sure, there are many persons of Mexican descent who live in the United States.  Of those, many were born in the United States.  Many more who were not born in the United States conduct all of their business in the United States.  This does not change when the business is drug distribution.

16

*imported*. *United States v. Job*, 871 F. 3d 852 (9th Cir. 2017). In that case, "the evidence at trial showed that Job's codefendant Robert Rodriguez imported methamphetamine from Mexico." *Id.* at 871. It further showed that "Rodriguez hired Job to cut methamphetamine for [a cooperating witness] and Rodriguez" and that "Job was aware that the methamphetamine that he cut was distributed to others." *Id.* at 867-68. The Court of Appeals found that evidence insufficient to trigger the enhancement since "the government provided no evidence that Job was personally involved in the importation of methamphetamine." *Id.* at 871. In Mr. Brandon's case, not only is there no evidence that Mr. Brandon was "personally involved" in the importation of methamphetamine, there is no evidence that the methamphetamine was imported at all.

It is true that the Ninth Circuit in *Job* explicitly rejected the conclusion of the Fifth Circuit that the enhancement applies on a strict liability basis to anyone who possesses imported methamphetamine regardless of whether the possessor knew that the methamphetamine was imported. *See United States v. Serfass*, 684 F. 3d 548, 551 (5th Cir. 2012). This circuit split is

17

irrelevant to the determination of Mr. Brandon's case, however, since the

Fifth Circuit and the Ninth Circuit both held that the government must

show that the methamphetamine itself was imported.  Notably, the Fifth

Circuit affirmed the application of the enhancement to Mr. Serfass because

a DEA officer "testified that Serfass obtained the methamphetamine from

an individual [and] identified that person by name … Serfass admitted …

that he obtained the methamphetamine from that individual [who] …

stated … that his source of supply was another [named] individual … who

brought the methamphetamine to him from Mexico."  *Id.* at 553-54.  No like

evidence exists in Mr. Brandon's case as the sourcing of the

methamphetamine distributed by Mr. Brandon ends at the delivery to him

in North Carolina.

## CONCLUSION

For the reasons argued above, this court must vacate Mr. Brandon's sentence and remand the case to the district court for a resentencing hearing in which it sentences Mr. Brandon after properly calculating the guideline range of imprisonment.

## REQUEST FOR ORAL ARGUMENT

Due to the complexity and importance of the issues presented in this

case, Mr. Brandon requests the court to hear oral argument in this matter.

/s/ Eric J. Foster

Eric J. Foster

ATTORNEY AT LAW

22 South Pack Square, Suite 300

Asheville, North Carolina 28801

(828) 771-4787

*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __23-4485__    **Caption:** US v. BRANDON _____

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓]    this brief or other document contains ____2,938____ [*state number of*] words

[ ]    this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓]    this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word 365 _____ [*identify word processing program*] in
Palatino Linotype 14pt _____ [*identify font size and type style*]; **or**

[ ]    this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Eric J. Foster _____

Party Name appellant _____

Dated: 12/19/2023 _____